## KEITH V. STATE.

1.  CIRCUIT COURT:    *Judge of:    Right to office cannot be questioned collaterally.*

    The defendant objected in the court below to the right of the Judge presiding, to act as such, and caused his objections to be spread upon the record.   *Held:* That as it appears from the facts disclosed by the objections and from legislation, of which this court will take judicial notice, that the Judge who presided, if not the Judge *de jure*, is the Judge *de facto* of the circuit in which the defendant was convicted, his right to the office can only be questioned in a direct proceeding to which he is a party.

2.  CRIMINAL PRACTICE:    *Instructions:    Positive and negative testimony: Province of jury.*

    On the trial of an indictment for murder, the court gave the jury the following instruction:   "The jury are instructed that if they find that the witnesses in this case, have testified affimatively to acts and words, that is, that they saw certain acts and heard certain words; this would be affirmative testimony, and if others say they were present at the time, and if such acts were done they did not see them, or if such words were spoken, did not hear them, this would be negative testimony; and one credible witness, testifying affirmatively, is entitled to more weight than any number of witnesses testifying negatively.   But if you find that some of the witnesses testifying affirmatively, that is, that certain acts were done

and certain words were spoken, and others present testify that such acts were not done, and such words were not spoken, the witnesses, otherwise being equally credible, would be entitled to equal weight." *Held:* That the jury would scarcely fail to consider this instruction as contradicting itself; and that it was error to instruct them upon the effect, or weight of the evidence, as it is the exclusive province of the jury to judge of the strength or weakness of all facts adduced to sustain an issue.


APPEAL from *Boone* Circuit Court.

R. H. POWELL, Judge.


The appellant was convicted of murder in the second de-gree, in the Boone Circuit Court, at the July term for the year 1887. He moved for a new trial and also in arrest of judgment, and both of these motions having been overruled, he excepted and obtained an appeal from the judgment pronounced against him.

The ground relied upon to arrest the judgment, as stated in the defendant's motion, was, that the Judge who presided at the time of his conviction, was not the legally constituted Judge of the court; that the Hon. Richard H. Powell, who held said court and presided at the trial, was, at the general election on the 4th day of September, 1886, elected Judge of the Third (3d) Judicial Circuit, composed of the counties of Stone, Independence, Jackson, Lawrence, Sharp, Izard, Fulton and Baxter; that Judge Powell was duly com-missioned, and having qualified, entered on his duties as Judge of said circuit; that by an act of the General Assembly, ap proved March 3, 1887, a new judicial circuit was created com-posed of the counties of Newton, Boone, Searcy and Marion, which prior to that time were part of the Fourth Judicial Cir-cuit, and the counties of Izard, Baxter and Fulton, which were part of said Third Circuit; that said new circuit, so composed, was designated as the Fourteenth (14th) Circuit, and that Judge Powell was authorized by said act to exercise the func-

tions of Judge of said Fourteenth Circuit, and by virtue of that
act and without other authority, he presided over said court at
the time of the defendant's conviction. When called on to
show cause against the sentence about to be passed upon him,
the defendant objected to it on the same ground stated in his
motion to arrest the judgment, and caused his objections to be
spread upon the record.

Section 2, of the act creating the Fourteenth Judicial Cir-
cuit, is as follows:

"SEC. 2. That the counties of Stone, Independence, Jack-
son, Lawrence, Sharp and Randolph shall hereafter compose
the Third (3d) Judicial Circuit of the State of Arkansas."

Section 7 provides: "That an election shall be held in the
several counties of the Third Judicial Circuit, as reorganized, on
the first Monday in May, 1887, in the mode and manner now
prescribed by law for holding elections for similar offices,"
etc.; and section 9, of the same act, is as follows:

"SEC. 9. That the Circuit Judge elected at the last gen-
eral election for the Third Circuit, whose residence falls within
the Fourteenth, as created by this act, shall continue to exer-
cise the functions of Circuit Judge for the said Fourteenth
Circuit until his successor is elected and qualified as now pro-
vided by law."

The act also provided, that for the purpose of holding the
spring terms in the counties affected, it should not take effect
until the first Monday in June, 1887.

The only ground of the motion for a new trial, which was
insisted upon by the appellant, is shown in the opinion.

*O. W. Watkins* for appellant.

1. Appellant had the right to raise the question as to
the Judge's authority to hold the court. *6 Ark., 227, 235; 12
id., 210; 25 id., 622.*

2. The court erred in giving instruction No. 1. *Art. 7, sec. 23, Const. Ark., 37 Ark., 585; 45 id., 172.*

3. Judge Powell was neither *de jure* nor *de facto* Judge of the Fourteenth Judicial Circuit. *Const., art. 7, sec. 15; sec. 50 id.; sec. 21, id.; sec. 22, id.; Acts 1887, p. 47; 9 Ark., 302; 11 Am. Law Reg., 552 and note; 48 Ark., 89; 2 Ark., 502; 4 Ark., 550.* The unauthorized acts of even a *de jure* officer are not binding, but void. *2 Ark., 229; 20 id., 77; 27 id., 349; 48 id., 151.*

*D. W. Jones,* Attorney General, for appellee.

Waiving the question as to the right of appellant to question Judge Powell's power or authority, we contend:

1. The Legislature added the counties of Newton and Boone to the *Third* Circuit, and changed its name to the Fourteenth.

They did really create a new circuit and named it the *Third.*

The Legislature has power to take a county from one circuit and add it to another. *Const., art. 18.* There is nothing in the *name* given a circuit. *9 Ark., 309.*

2. Similar instructions to the charge in this case were given in *29 Ark., 25–6.* The court has the right to give cautionary instructions. *29 id., 116.*

I. COCKRILL, C. J. The appellant does not deny the jurisdiction of the Boone Circuit Court, but seeks to vacate the judgment of conviction upon the ground that the Judge who presided over the court at the term when he was convicted was not the legally constituted Judge of the court. He undertook to raise the question by objecting to the passing of sentence upon him and by motion in arrest of judgment. But the facts disclosed by the objections which he caused to be spread upon the record, as well as our judicial knowledge of the legislation

1. JUDGE DE FACTO:

Right to act cannot be questioned collaterally.

bearing upon the question, show th it Judge Powell, if not the Judge *de jure*, is the Judge *de facto* of the circuit in which the appellant was convicted. The judgment of the court is not, therefore, subject to attack, and the question of the validity of the act of March 3, 1887, argued by counsel, is not presented for consideration.

The principle that the acts of an officer *de facto* are binding upon the public as though done by one in office *de jure*, and that his right to the office cannot be questioned except in a direct proceeding to which he is a party, is well settled, and is not new in this court. *Moore, as Adm'r., v. Turner, 43 Ark., 243; Pearce v. Edington, 38 Ark., 150; Kaufman v. Stone, 25 id., 336; Caldwell v. Bell & Graham, 3 Ark., 419; S. C., 6 id., 227; Hildreth's heirs v. McIntire's devisees, 19 Am. Dec., 61, and note.*

The case of *Rives v. Petit*, in the *4th Ark., 582*, is more nearly analogous than any other in our reports. There a Circuit Judge presided in a court outside of his circuit under the supposed authority of an act of the Legislature permitting an exchange of circuits between Judges, which turned out to be unconstitutional. Upon an appeal from a judgment rendered by the court thus organized, it was ruled that the proceedings were binding upon the parties and the judgment was affirmed. It was intimated in that case that the ruling might have been different if the parties had not voluntarily submitted to the jurisdiction; but as consent cannot confer jurisdiction or judicial power (*Dansby v. Beard, 39 Ark., 254; Gaither v. Wasson, 42 id., 126*), and the facts were all apparent to the court, we fail to appreciate the force of the suggestion. The court went further in that case than we are called upon to go in this, inasmuch as there was a Judge *de jure* in office whose duty it was to hold the court the proceedings of which were questioned; while here, if the Fourteenth Judicial Circuit has a legal existence, as counsel for the appellant admits, and Judge Powell, who is exercising the functions of that office under legislative

sanction, is not the Judge *de jure*, there is no such Judge. But the doctrine of *Rives v. Petit* is sustained by well considered cases.

In the case of *Clark v. Commonwealth*, *29 Penn. St.*, *129*, the question presented in this case arose. The Legislature had enacted that the county of Montour should be transferred from one judicial district to another, during the term for which the Judge of the latter district had been elected, and the prisoner was convicted of murder in Montour county, after a trial before the Judge of the district to which that county had been transferred. It was objected on behalf of the prisoner there, as in this case, that the act of the Legislature was equivalent to an appointment of a Judge for that county without an election, and was, therefore, under the Constitution of Pennsylvania, void.

What the court say in reply to this argument is so pertinent that we quote it as applicable to this case, viz.: "A very important question upon the constitutional power of the Legislature so to alter judicial districts as to transfer a Judge to the courts of certain counties who was never voted for in those counties, was intended to be raised by this plea; but, unfortunately for the prisoner, it cannot be raised in this form. His plea admits that Judge Jordan" (before whom the trial was had) "is a Judge *de facto*; and if it did not admit this, we would take judicial notice of the legislation which placed him in the courts of Montour county, so far as to hold him to be a Judge *de facto*. That legislation is at least a colorable title to his office. Can the right and power of a Judge *de facto*, with color of title, be questioned in any other form than by *quo warranto*, at the suit of the Commonwealth? Assuredly not.

That a private relator could not test the validity of a judicial commission, even by *quo warranto*, was decided in *Burrell's Case*, *7 Barr*, *34*, and the principle has been applied in a variety of other other cases. See *7 S. & R.*, *386; 2 Rawle*, *139; 16*

*S. & R.*, *144; 2 W. & S., 37; 8 Harris, 415; 5 Mass. Rep., 230; 4 Gill & Johnson, 1; 10 B. & C., 230; 11 Ad. & Ell., 949*

But if a private suitor may not, by the appropriate process, question a Judge's commission when he (the Judge) has a chance to be heard in defence of his right, much less may such a suitor do it collaterally in an action to which the Judge is not a party, and where he cannot be heard by himself or counsel.

If this defendant may plead to the jurisdiction of the Judge, every defendant in Montour county, whether in civil or criminal proceedings, may do the same; and Judge Jordan, instead of trying the rights of parties, will be continually engaged in defending his own. Not merely in defending them, but in adjudicating them, contrary to that law, which is too elementary even for the bill of rights, that forbids a man to judge his own cause. He is a Judge *de facto*, and as against all parties but the Commonwealth, he is a Judge *de jure* also. If the legislation complained of is to be tested, it must be at the instance of the Attorney General or of some public officer representing the sovereignty of the State." See, too, *Com. v. McCombs, 56 Penn. St., 436.*

The same principle was announced by GRAY, C. J., for the Supreme Court of Massachusetts in *Commonwealth v. Taber, 123 Mass., 253,* which was the case of an appeal from a judgment of conviction; and in *Sheehan's case* in *122 Mass., 445,* where the question arose on application for *habeas corpus.*

The Court of Errors of New York have maintained the same doctrine in a case where the judgment appealed from was rendered by a court presided over by Judges who were sitting under the supposed authority of unconstitutional legislation. *People v. White, 24 Wend., 518.* The question underwent an elaborate investigation in the Supreme Court of Connecticut and a similar conclusion was reached. *State v. Carroll, 38 Conn., 449.* See, too, *Milward v. Thatcher, 2 Durn. & East,*

Keith v. State.

*81, 87; Mallett v. U. S. Mining Co., 1 Nevada, 188; Ex parte, Strange, 21 Ohio St., 610; Ex parte, Johnson, 15 Neb., 512; In re Whiting, 2 Barb., 513; People v. Bangs, 24 Ill., 184.*

It would be inconsistent with a well-settled principle to undertake to determine Judge Powell's right to exercise the functions of his office in a proceeding to which he is not a party.

The cases of *Dansby v. Beard, 39 Ark., 254; Gaither v. Wasson, 42 id., 126,* and *Hillis v. State, 45 id., 478,* are not inconsistent with this doctrine. The first and second cases were efforts to confer judicial power by the consent of parties; and in the third the record disclosed that the individual who presided at the trial was an intruder into an office which was occupied by a Judge *de jure.* There cannot be a Judge *de jure* and *de facto* exercising the duties of the same office at one and the same time. The latter was too, the case of a special Judge and the practice was long ago established in this court that the limited power of a special Judge commissioned by the Governor (as under the Constitution of 1836) to try causes when the regular Judge was disqualified, might be inquired into by a litigant and considered on appeal by causing his authority to be spread upon the record. *Caldwell v. Bell et al., 6 Ark., 227; Sweeptzer v. Gaines, 19 Ark., 96; Cruson v. Whitley, id., 99.*

The case of *Dunn v. State, 2 Ark.,* and those following it, cited by the counsel for the appellant, have no application to the facts of this case. There is no question about the acts of a *de facto* officer presented by them. They relate to courts held at a time and place not authorized by law. The court in this case was held at the time and place designated by statute.

2. CRIMINAL PRACTICE:

Error to instruct jury upon effect or weight of evidence.

II. Upon the trial of the cause the court gave the following instruction to the jury against the defendant's objection:

"The jury are instructed that if they find that witnesses in the case have testified affirmatively to acts and words, that is, that they saw certain acts and heard certain words, this would

be affirmative testimony; and if others say they were present at the time, and if such acts were done, they did not see them, or if such words were spoken, did not hear them, this would be negative testimony, and one credible witness testifying affirmatively is entitled to more weight than any number of witnesses testifying negatively. But if you find that some of the witnesses testify affirmatively, that is, that certain acts were done and certain words were spoken, and others present testify that such acts were not done, and such words were not spoken, the witnesses otherwise being equally credible, would be entitled to equal weight."

The defendant had undertaken to justify the killing upon the theory of self-defence. His version of the matter was that the deceased, whose name was Clark, advanced upon him in a threatening manner with his hand behind him as in his hip pocket; that he (the defendant), retreated some paces, and until Clark was close upon him and in the act of drawing his hand from his pocket, disclosing as he thought the handle of a pistol, when he fired the fatal shot.

The testimony to which the instruction is most applicable is in substance as follows :

"Jim Villines, a witness for the State, in his evidence, says that in conversation with defendant near his father's house about one hour after the killing of Clark, the defendant said that if Clark had a pistol or anything in his hand that he (defendant) did not see it. He also testified that Geo. Keith and Mrs. Keith, father and mother of the defendant, were present at the time of the conversation.

Geo. Keith testified that he was present at the conversation; was as close to the defendant as Jim Villines was, and that he was paying attention to what was said, and that he heard no such language.

Mrs. Keith in her evidence, as set out in the bill of exceptions, says that when Jim Villines came it was suggested to

her that she had better go out with defendant and hear what. passed; that she went with him to the gate for that purpose; that she heard all he said to Jim Villines, and that no such language was used as that testified to by Jim Villines.

It was doubtless understood by the Circuit Judge that a negative witness whose attention is concentrated on a particular point, may be entitled to as much weight as an affirmative witness to the same issue (*1 Wharton Ev., sec. 415*), but without more definite explanation than we find in the court's charge the jury would scarcely fail to consider the instruction set out as self-contradictory; and, looking at the first part alone, might well have supposed that they were directed either to disregard the negative testimony given for the prisoner, or else to give it less weight than that for the State which conflicted with it.

But aside from this, it is not the province of the court to instruct the jury upon the effect or weight of evidence. It is the exclusive province of the jury to judge of the strength or weakness of all facts adduced to sustain an issue. *Shinn v. Tucker, 37 Ark., 592; Flynn v. State, 43 id., 289; Polk v. State, 45 id., 165; Oppenheimer v. Stephens, id., 492.*

However we may regret the unfortunate departure from the ancient practice which permitted the trial Judge to aid the jury in arriving at an intelligent conclusion on the facts, we are bound nevertheless by the written law.

The judgment must be reversed and the cause remanded for a new trial.