STATE of Arkansas v. Jerry ROBERTS

CR 73-98                                         499 S.W. 2d 600

Opinion delivered October 1, 1973

*Jim Guy Tucker,* Atty. Gen., by: *James W. Atkins,* Asst. Atty. Gen., for appellant.

*M. J. Probst, Baker & Probst, P.A.,* for appellee.

Conley Byrd, Justice. Informations were filed against appellee Jerry Roberts charging him with six violations of the State Credit Card Crime Act, Ark. Stat. Ann. § 41-1977 (Supp. 1971). Each information was filed in the name of Alex Streett, Prosecuting Attorney, by Francis T. Donovan, Deputy Prosecuting Attorney. After the jury was impaneled, appellee moved to dismiss the charges

against him because Francis T. Donovan had not been duly appointed as a deputy prosecuting attorney pursuant to Ark. Stat. Ann. § 24-119 (Repl. 1962).[1] The trial court granted the motion and the State has appealed. For reversal the State in its brief contends that the *de facto* status of Deputy Prosecuting Attorney Francis T. Donovan was sufficient to sustain the validity of the informations filed.

Mr. Donovan appeared at oral argument and attempted to raise a constitutional issue and to contend that he was a deputy *de jure*. Because such arguments had not been made in the briefs and because appellee was not necessarily in a position to respond, as is our practice, we did not permit the points to be raised or argued. Since such issues may be raised in an action to which Mr. Donovan is a party, nothing herein stated is to be considered as expressing our opinion on those issues.

Appellee relies upon *State* v. *Eason and Fletcher*, 200 Ark. 1112, 143 S.W. 2d 22 (1940), to support the proposition that he was entitled to raise the issue as to Donovan's qualification.

The record shows that Alex Streett was elected as prosecuting attorney and took office on January 1, 1971, and that he was elected in 1972, to a second two year term and took the oath of office on January 1, 1973. Pursuant to Ark. Stat. Ann. § 24-119 (Repl. 1962), Mr. Donovan was appointed as a deputy prosecuting attorney on January 1, 1971, and was confirmed by the circuit court. No new appointment by the prosecuting attorney nor confirmation by the court[2] was made for Mr. Donovan for the term commencing January 1, 1973, but he continued to act as such deputy and to try cases before the circuit court until the present objection was raised by appellee on May 10, 1973. Mr. Streett appeared and con-

---

[1] No objection was raised to the time the motion was made. See Ark. Stat. Ann. § 43-1206 (Repl. 1964) and *Johnson* v. *State*, 223 Ark. 929, 270 S.W. 2d 907 (1954).

[2] The trial Judge said he would not approve the appointment of Mr. Donovan, but see *State ex rel. Pilkinton, Prosecuting Attorney* v. *Bush, Judge,* 211 Ark. 28, 198 S.W. 2d 1004 (1947), holding that the judge's actions are subject to review.

firmed that Mr. Donovan was his deputy.[3] He also testified that he had not made new appointments for his deputies serving in other counties.

We have a number of cases involving *de facto* officers and the right of a litigant to collaterally attack the validity of proceedings by *de facto* officers. See *Faucette, Mayor* v. *Gerlach,* 132 Ark. 58, 200 S.W. 279 (1918); *Keith* v. *State,* 49 Ark. 439, 5 S.W. 880 (1887), and *Kaufman & Co.* v. *Stone, Admin.,* 25 Ark. 336 (1869). The *de facto* rule and the public policy supporting the same are set out in *Faucette, supra,* as follows:

> " 'An officer *de facto* is one who by some color of right is in possession of an office and for the time being performs its duties with public acquiescence, though having no right in fact. His color of right may come from an election or appointment made by some officer or body having colorable but no actual right to make it; or made in such disregard of legal requirements as to be ineffectual in law; or made to fill the place of an officer illegally removed; or made in favor of a party not having the legal qualifications; or it may come from public acquiescence in the officer holding without performing the precedent conditions, or holding over under claim of right after his legal right has been terminated; or possibly from public acquiescence alone when accompanied by such circumstances of official reputations as are calculated to induce people, without inquiry, to submit to or invoke official action on the supposition that the person claiming the office is what he assumes to be.' Cooley on Constitutional Limitations (7 ed.), pages 897 and 898. Continuing, the learned author said: 'But for the sake of order and regularity, and to prevent confusion in the conduct of public business and insecurity of private rights, the acts of officers *de facto* are not suffered to be questioned because of the want of legal authority except by some direct proceeding instituted for the purpose by the State or by some one claiming the office *de*

---

[3] The record does not explain why Mr. Streett did not sign the informations and proceed with the trial.

*jure,* or except when the person himself attempts to build up some right, or claim some privilege or emolument, by reason of being the officer which he claims to be. In all other cases the acts of an officer *de facto* are as valid and effectual, while he is suffered to retain the office, as though he were an officer by right, and the same legal consequences will flow from them for the protection of the public and of third parties. This is an important principle, which finds concise expression in the legal maxim that the acts of officers *de facto* cannot be questioned collaterally.' "

*Keith, supra,* and *Kaufman & Co., supra,* support the proposition that the title to an office can only be tried in a direct proceeding to which the officer is a party. In the cases of *Greenwood* v. *State,* 17 Ark. 332 (1856), and *Miller* v. *Callaway,* 32 Ark. 666 (1878), the officers were direct parties to the proceedings.

The confusion that follows when courts fail to recognize the *de facto* officer doctrine can be seen by the results that flowed from our decisions in *Howell* v. *Howell and Stevens* v. *Stevens,* 213 Ark. 298, 208 S.W. 2d 22 (1948). See also *Pope* v. *Pope,* 213 Ark. 321, 210 S.W. 2d 319 (1948).

In *Smith* v. *Landsden,* 212 Tenn. 543, 370 S.W. 2d 557 (1963), the Supreme Court of Tennessee in determining what constituted a "collateral attack" said:

"From the above quotations can be gleaned several guidelines for determining whether a particular attack upon the title of a public official is 'collateral.' By the very definition of the word if the attack is secondary, subsidiary, subordinate, *i.e.,* related to the main matter under consideration but not strictly a part thereof, the attack is indirect and collateral. If the official's title is questioned in a proceeding to which he is not a party or which was not instituted specifically to determine the validity of his title the attack is collateral. If the title of the officer is questioned in a proceeding in which he is a party merely because he is acting in his official capacity the attack is

collateral. Lastly if the attack is made because it is necessary to show the officer's want of title to lay a basis for some other relief the attack is collateral. . . . "

When the record before us here is considered in the light of the foregoing authorities, it appears that Mr. Donovan, through the acquiescence of the circuit judge, was at least a *de facto* deputy prosecuting attorney. Furthermore, the attack here made upon his authority to act would constitute a collateral attack and as such it cannot be made under the law. For cases from other jurisdictions denying an attack upon the status of a deputy prosecuting attorney under similar circumstances, see *Walker* v. *State,* 146 Tex. Crim. 138, 171 S.W. 2d 887 (1943), and *State* v. *Nevius,* 77 Ohio Ct. App. 161, 66 N.E. 2d 243 (1945).

In *State* v. *Eason and Fletcher, supra,* relied upon by appellee neither the *de facto* status of the officer nor the collateral attack issue was considered. Consequently, we do not consider the language thereof controlling in this case.

For the reasons herein stated the order of dismissal is reversed and remanded.