The Honorable Gilbert R. Baker State Senator #17 Cooper Lane Conway, AR 72034
Dear Senator Baker:
You have requested my opinion concerning a vacancy on a local public facilities board ("board"). You have cited A.C.A. § 14-137-108 as the applicable statute, and you have provided the following factual backdrop for your questions:
 Last summer, a local public facilities board had a vacancy on its board membership. The board at that time submitted a list of names for consideration to the mayor. The mayor then appointed someone from that list. This individual served for four months before it was determined that he/she was never confirmed by the governing body. When it was brought before the governing body, they decided not to confirm this individual even after four months of service.
Your specific questions in this regard are as follows:
 1. Is there a time limit on how soon an individual must be confirmed or denied after appointment to a public facilities board by the mayor?
 2. If the governing body does not confirm the mayor's appointment, does the mayor choose from the remaining names on the list or does it revert back to the board for re-consideration and re-submission of three more names?
 3. Are there any special steps that need to be followed if the mayor's appointment is denied after serving for four months?
 4. Are there any special steps that need to be followed when there have been seven months that have passed between the vacancy and the final appointment?
 5. If the mayor was free to choose a person from the remaining two names, do both individuals have to reside in the district if the by-laws have such a requirement?
 6. If only one person resided in the district and the mayor did not think that person was a proper choice to serve on the board, would the mayor have authority to submit three new names to the board?
 7. If the board did not want to confirm a person chosen by the mayor, would the board have the authority to appoint another person?
 8. By law, three names must be submitted. If three names are submitted, and one of the three does not meet the qualifications of the by-laws, has the board violated state law?
 9. If the board violated the law by not submitting three qualified persons, would the mayor have the authority to appoint whomever he wants without having to refer to the list of candidates submitted by the board? If not, how should he proceed?
RESPONSE
The answer to your first question is "no" under the statute. It is my opinion in response to your second question that the mayor generally chooses from the remaining names on the list. With regard to your third and fourth questions, no particular conclusions can be drawn based merely upon the delay between the appointment and the confirmation denial. I lack sufficient facts to speculate further concerning the applicable procedure in this regard. It is my opinion in response to your remaining questions that the Public Facilities Boards Act (A.C.A. § 14-137-101 et seq.) does not squarely address the scenario presented by this line of inquiry, which involves the board's nomination of one or more unqualified individuals. A determination in this regard would necessarily be case specific, perhaps suggesting the need to consult local counsel who would be better acquainted with the specific facts.
Question 1 — Is there a time limit on how soon an individual must beconfirmed or denied after appointment to a public facilities board by themayor?
The answer to this question is "no." This is not to suggest that the confirmation requirement can be dispensed with. And depending upon the particular circumstances, it is possible that some action could be maintained to force the governing body to act if it was failing to confirm or deny an appointment. But in response to your particular question, the statute establishes no specific time period within which confirmation must occur.
Arkansas Code Annotated § 14-137-108(a) provides in relevant part as follows:
 (5) (A) In the event of a vacancy in the membership of the board, however caused, the mayor or the county judge shall appoint a successor member nominated by a majority of the board to serve the unexpired term, subject to confirmation by the governing body of the municipality or county.
 (B) The board shall submit a written list of three (3) nominees to fill the vacancy to the mayor or the county judge not later than sixty (60) days after the vacancy occurs.
 (C) If the board fails to submit a written list of nominees not later than sixty (60) days after the vacancy, the mayor or the county judge may appoint a successor member without a nomination from the board.
A.C.A. § 14-137-108(a)(5) (Supp. 2003).[1]
As you can see, the statute clearly requires the governing body's confirmation of the mayor's appointment of a successor member to fill a vacancy on the board. I will not speculate regarding the possible consequences of a governing body's inaction in this regard, as this does not appear to be the focus of your question.[2] From the bare facts you have provided, it seems that the governing body in this instance eventually acted and decided not to confirm the mayor's appointment. Your question and the recited facts suggest that you are asking instead about the propriety and effect of the governing body's decision not to confirm in light of the fact that it occurred after four months of service.
I believe it is sufficient to note in this regard that the statute makes no provision for automatic confirmation, or rejection, of an appointee after any specified time. Compare, e.g., A.C.A. §§ 14-169-208(c)(2)(C)(i) (providing that an appointment to fill a vacancy on a housing authority "shall be deemed confirmed and the governing body shall have no power to act on the appointment thereafter" if the governing body "fails to confirm or reject the . . . appointment within forty-five (45) calendar days after receiving written notice of the appointment . . . [;]" and §14-250-109(c)(1) (requiring an oath of office for directors of a wastewater district and stating that "failure to take the oath within thirty days of appointment or election will result in the director's removal from office.") Had the legislature intended to establish any requirements such as these in the case of a board vacancy it could easily have done so.
Because no consequences automatically flowed from the delay in this instance between the mayor's appointment and the governing body's decision not to confirm, it must be concluded that the decision not to confirm was authorized.
Question 2 — If the governing body does not confirm the mayor'sappointment, does the mayor choose from the remaining names on the list ordoes it revert back to the board for re-consideration and re-submissionof three more names?
It is my opinion as a general matter that the mayor chooses from the remaining names on the list in that circumstance. This follows from the well established principle that legislative intent must be discerned from the language employed if a statute is clear and unambiguous on its face.See generally Wilcox v. Safley Constr. Co., 298 Ark. 159, 766 S.W.2d 12
(1989). In this regard, the statute clearly provides that the mayor must appoint a successor member from the board's list of three nominees if the list is submitted no later than sixty days after the vacancy occurs. See
A.C.A. § 14-137-108(5)(B), supra. I believe it reasonably follows, therefore, that the mayor must generally appoint from the remaining nominees if the governing body does not confirm the initial appointment.
Question 3 — Are there any special steps that need to be followed if themayor's appointment is denied after serving for four months?
I am somewhat uncertain what "steps" this question might contemplate. As indicated above, I can draw no particular conclusions based merely upon the delay between the appointment and the confirmation denial. It appears that the actions of the mayor's appointee during that period will be valid and effective because he will have de facto status. See n. 2,supra. Once it is realized that confirmation has not occurred, however, and the governing body acts by declining to confirm, it is my opinion that the mayor generally should proceed to appoint one of the remaining nominees. I lack sufficient facts to opine further regarding the procedures to be followed, as this likely depends upon the particular surrounding circumstances.
Question 4 — Are there any special steps that need to be followed whenthere have been seven months that have passed between the vacancy and thefinal appointment?
Not other than as stated above in response to Question 3.
Question 5 — If the mayor was free to choose a person from the remainingtwo names, do both individuals have to reside in the district if theby-laws have such a requirement?
Some initial explanation of this question is necessary. It has come to my attention that the bylaw requirement is not the focus of Question 5, or your remaining line of inquiry. Rather, it is my understanding that I am to assume that the bylaws establish a requirement for board membership that is not met by at least one of the individuals on the list of nominees submitted by the board pursuant to A.C.A. § 14-137-108(a)(5),supra. Accordingly, your fifth question is whether that individual was properly nominated, given the fact that he or she does not meet the presumptively valid bylaw requirement. I believe it is evident that the answer to this question is "no." This lays the foundation for your remaining questions which raise procedural issues not squarely addressed by the Public Facilities Boards Act.
Question 6 — If only one person resided in the district and the mayor didnot think that person was a proper choice to serve on the board, wouldthe mayor have authority to submit three new names to the board?
It is my opinion that the answer to this question is "no." There is no procedure under the statute for the mayor to submit names to the board. Rather, the board submits the written list of nominees to the mayor. Id.
The mayor could, however, inform the board that one of its nominees was not qualified and demand that it resubmit another name. (I am assuming that this question is asked with regard to the two nominees who remain after the mayor's first appointee is rejected by the city governing body). The statute is not explicit in this respect, but it clearly provides that the mayor will appoint from a list of three nominees (A.C.A. § 14-137-108(a)(5)(B), supra); and in my opinion this reasonably is interpreted to contemplate qualified nominees. Thus, once the mayor realizes that not all of the nominees qualify and notifies the board of this fact, it reasonably follows that the board should substitute a nominee. It must also be noted, however, that the absence of any procedure under the statute for addressing this scenario could be problematic if the board fails to act when notified that one of the original nominees did not meet the bylaw requirement. I cannot speculate regarding the possible outcome in that event, other than to note that the mayor would in my view be acting within the letter and the spirit of the statute in demanding the new nomination.
Question 7 — If the board did not want to confirm a person chosen by themayor, would the board have the authority to appoint another person?
Please note that the mayor's appointee is confirmed by the governing body of the city rather than the board. The answer to this question is therefore "no" because the board's role is limited to nominating individuals in the event of a vacancy. It should perhaps be noted additionally in this regard that the city governing body only confirms or denies the mayor's appointee. The governing body, like the board, does not make the appointment.
Question 8 — By law, three names must be submitted. If three names aresubmitted, and one of the three does not meet the qualifications of theby-laws, has the board violated state law?
See generally response to Question 6. As indicated therein, I believe the board would be acting contrary to the statute in failing to submit the names of three qualified individuals. This does not mean, however, that the mayor would then be authorized to submit three names or that the board would be required to resubmit all three names. Rather, as indicated above, I believe the board should name another nominee to substitute for the one who was not qualified.
Question 9 — If the board violated the law by not submitting threequalified persons, would the mayor have the authority to appoint whomeverhe wants without having to refer to the list of candidates submitted bythe board? If not, how should he proceed?
I cannot opine based merely upon the board's failure to submit three qualified nominees that the mayor would have the authority to appoint whomever he wants to fill the vacancy. I can speculate that there may be circumstances in which the board's actions evidence a failure to submit the required written list of nominees such that the A.C.A. §14-137-108(a)(5)(C), supra, would apply and permit the mayor to appoint a successor without a nomination. But I must caution that this would be highly dependent upon the particular attendant facts and circumstances. Because the statute does not address this scenario, I cannot opine further, but instead must suggest that the matter be referred to local counsel for guidance in identifying the possible alternatives under the specific facts.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] I assume that this is the applicable subsection in light of your reference to the board's submission of three names to the mayor. This provision applies to boards established by cities having populations of less than 100,000. A.C.A. § 14-137-108(2)(B) (Supp. 2003). In cities with populations over 100,000, the board elects a successor member in the event of a vacancy. See A.C.A. § 14-137-108(b)(4) (Supp. 2003).
I also assume that the board in this particular instance submitted the list of nominees to the mayor within the requisite 60-day period, given your statement that the mayor appointed someone from the list. Otherwise, the mayor presumably would have made an appointment pursuant to § 14-137-108(a)(5)(C), which dispenses with the nomination requirement.
[2] I will note nevertheless that the mayor's appointee in this instance likely had "de facto" status during the four-month period, even though he did not yet possess the statutory qualifications for the office. "An officer de facto is one who by some color of right is in possession of an office and for the time being performs its duties with public acquiescence, though having no right in fact. The acts of an officer de facto are as valid and effectual as though he were an officer by right, and the same legal consequences will flow from them for the protection of the public and of third parties." See State v. Roberts,255 Ark. 183, 185-186, 499 S.W.2d 600 (1973), citing Faucette, Mayor v.Gerlach, 132 Ark. 58, 200 S.W. 279 (1918). The courts have held officers to have de facto status in situations where they have not been appointed or confirmed as required by statute. See Op. Att'y Gen. 2000-008 and cases cited therein.