Nicki Ray WEEKS *v.* STATE of Arkansas

CA CR 98-358                                           977 S.W.2d 241

Court of Appeals of Arkansas
Division III
Opinion delivered November 4, 1998

Christopher Carter, Public Defender, for appellant.

Winston Bryant, Att'y Gen., by: Gil Dudley, Asst. Att'y Gen., for appellee.

JOHN B. ROBBINS, Chief Judge. Appellant Nicki R. Weeks was convicted in a jury trial of first-offense DWI, felony fleeing by means of a vehicle, and misdemeanor fleeing on foot. He was sentenced to four years in the Arkansas Department of Correction for felony fleeing, to run concurrently with one-year and thirty-day terms in the county jail for DWI and fleeing on foot, respectively. In addition, Mr. Weeks was fined a total of $6100.00.

On appeal, Mr. Weeks does not challenge his conviction for fleeing on foot. However, he argues that his convictions for DWI and felony vehicular fleeing should be reversed. For each of these charges he contends that there was insufficient evidence to support the verdict.

The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. Thomas v. State, 312 Ark. 158, 847 S.W.2d 695 (1993). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. Lukach v. State, 310 Ark. 119, 835 S.W.2d 852 (1992). In determining the sufficiency of the evidence, we review the proof in the light most favorable to the appellee, con-

sidering only that evidence which tends to support the verdict. *Brown v. State*, 309 Ark. 503, 832 S.W.2d 477 (1992).

Officer Neal Thomas testified that he came into contact with Mr. Weeks during the late evening hours of February 21, 1997, and early morning hours of February 22, 1997. According to Officer Thomas, he observed a vehicle traveling at 58 miles per hour in a 45-mile-per-hour speed zone shortly before midnight, and attempted to pursue the vehicle but was not able to keep up with it. Then, shortly after midnight, he saw the same car speeding again and gave chase. Officer Thomas testified that, while his blue lights were on and he was in pursuit of the vehicle, it sped up and passed three cars on the left side of double yellow lines. The cars being passed were forced to ease off the road and give way to the speeding car, which continued to increase its speed to about 95 miles per hour.

Officer Thomas started slowing down when the suspect's vehicle came to a curve, and he witnessed the vehicle "fish tail" through some gravel and ultimately come to a stop at a gas station. According to Officer Thomas, there were several people around the store and a man was pumping gas during the incident. When the vehicle being pursued came to a stop, Officer Thomas saw Mr. Weeks step out of the car and flee across the road on foot.

After Mr. Weeks fled the scene on foot, Officer Thomas placed the woman who was a passenger in the car under arrest. The woman, who was ultimately not charged with anything, advised Officer Thomas that Mr. Weeks might be headed toward a particular mobile home. Officer Thomas called for backup, and Officer Mark Morton proceeded to the trailer identified by the passenger in the car. Officer Morton observed Mr. Weeks on the steps of the trailer, at which point Mr. Weeks fled on foot for another 500 yards before finally being apprehended. Shortly after his arrest, Mr. Weeks registered .104 on a breathalyzer test.

With regard to the automobile chase, Officer Thomas gave the opinion that Mr. Weeks did not have full control of his vehicle and that "it was unsafe to enter the parking lot at that speed." Officer Thomas further testified that Mr. Weeks' erratic driving caused the three cars that he passed to exit to the shoulder for safety purposes, and that Mr. Weeks operated his vehicle in a man-

ner that created a substantial danger of death or serious physical injury to other persons on the evening at issue.

Mr. Weeks testified on his own behalf, and he acknowledged traveling at a speed in excess of eighty miles per hour and passing a few vehicles. However, he stated that he was unaware that a police car was behind him with its blue lights on, and that he was hurrying to the Missouri border so that he could get to the liquor store before it closed. Mr. Weeks testified that, as soon as he saw the blue lights, he stopped his vehicle, but that he then fled on foot because he was scared. As to whether or not he was intoxicated, Mr. Weeks stated, "Let's put it this way: I could have sat there and drank a bunch more."

For reversal, Mr. Weeks first contends that there was insufficient evidence to convict him of felony fleeing by means of a vehicle. The fleeing statute is codified at Ark. Code Ann. § 5-54-125 (Repl. 1997), which provides in pertinent part:

> 5-54-125. Fleeing.
>
> (a) If a person knows that his immediate arrest or detention is being attempted by a duly authorized law enforcement officer, it is the lawful duty of such person to refrain from fleeing, either on foot or by means of any vehicle or conveyance.
>
> (b) Fleeing is a separate offense and shall not be considered a lesser included offense or component offense with relation to other offenses which may occur simultaneously with the fleeing.
>
> (c) Fleeing on foot shall be considered a Class C misdemeanor, except under the following conditions:
>
> (1) If the defendant has been previously convicted of fleeing on foot anytime within the past one-year period, subsequent fleeing on foot offenses shall be Class B misdemeanors;
>
> (2) Where property damage occurs as a direct result of the fleeing on foot, the offense shall be a Class A misdemeanor;
>
> (3) Where serious physical injury occurs to any person as a direct result of the fleeing on foot, the offense shall be a Class D felony.
>
> (d) Fleeing by means of any vehicle or conveyance shall be considered a Class A misdemeanor.

(1) Fleeing by means of any vehicle or conveyance shall be considered a Class D felony if, under circumstances manifesting extreme indifference to the value of human life, a person purposely operates the vehicle or conveyance in such a manner that creates a substantial danger of death or serious physical injury to another person or persons.

Mr. Weeks was convicted under subsection (d)(1) of the above statute, and he asserts that the conviction must be reversed because the evidence presented by the State was insufficient to establish that he purposely operated his vehicle in a manner that created a substantial danger of death or serious physical injury, or that he exhibited an extreme indifference to the value of human life. He submits that, at most, his conviction for fleeing in a vehicle should be reduced to a Class A misdemeanor.

■ Viewed in the light most favorable to the State, we find substantial evidence to support Mr. Weeks' conviction for Class D felony vehicular fleeing. Officer Thomas testified that Mr. Weeks exceeded the speed limit by 50 miles per hour; passed three cars on the left of a double yellow line, which compromised the safety of the passengers of the other cars; approached a curve at a dangerously high speed; and entered a convenience store parking lot at about eighty miles per hour while patrons were present. This evidence supported the jury's determination that, during his flight from Officer Thomas, Mr. Weeks purposely operated his vehicle in a manner that created a substantial danger of death or serious physical injury to others, and that he did so under circumstances manifesting an extreme indifference to the value of human life.

Mr. Weeks' remaining argument is that there was insufficient evidence to convict him of DWI. Arkansas Code Annotated section 5-65-103 (Repl. 1997) provides:

(a) It is unlawful and punishable as provided in this act for any person who is intoxicated to operate or be in actual physical control of a motor vehicle.

(b) It is unlawful and punishable as provided in this act for any person to operate or be in actual physical control of a motor vehicle if at that time there was one-tenth of one percent (0.10%) or more by weight of alcohol in the person's blood as determined by a chemical test of the person's blood, urine, breath, or other bodily substance.

Mr. Weeks points out that he registered .104 on the breathalyzer test and that Officer Thomas testified on cross-examination that "[t]he [breathalyzer] machine has a plus or minus factor of .01 for the external check." He contends that, if the machine has a .01 variance for determining whether or not it is accurate when tested, this variance should also apply to his breath sample, which means that his true blood-alcohol level was somewhere between .094 and .114. Thus, he argues, there was insufficient proof that his blood-alcohol level was .10% or more, and that he should not have been convicted under subsection (b) of Ark. Code Ann. § 5-65-103 (Repl. 1997). He acknowledges that subsection (a) only requires intoxication in order to support a DWI conviction for a person in control of a motor vehicle, and "intoxicated" is defined as follows:

> "Intoxicated" means influenced or affected by the ingestion of alcohol, a controlled substance, any intoxicant, or any combination thereof, to such a degree that the driver's reactions, motor skills, and judgment are substantially altered and the driver, therefore, constitutes a clear and substantial danger of physical injury or death to himself and other motorists or pedestrians[.]

*See* Ark. Code Ann. § 5-65-102(1) (Repl. 1997). However, he contends that there was insufficient evidence that he was intoxicated under this definition because he testified that he did not feel intoxicated, was able to stop his vehicle and run at least 500 yards, and was administered no sobriety tests.

We reject Mr. Weeks' final contention. Although he suggests that his blood-alcohol level might have been as low as .094, Officer Thomas stated:

> It is not true that if Mr. Weeks registered .104 that, using those standards, he could potentially be between .094 and .114. The .01 ratio is an allowed figure for the external standard check. It has nothing to do with the personal sample.

Moreover, the breathalyzer test was not administered until about forty-five minutes after Mr. Weeks fled from Officer Thomas. This evidence amounted to substantial evidence that, at the time he was in control of his vehicle, Mr. Weeks' blood-alcohol level was at least .10.

We further find that, even in the absence of the breathalyzer test, the State presented substantial evidence of intox-

ication. It is undisputed that Mr. Weeks had been drinking and was traveling at a very high rate of speed and was passing cars in an unsafe manner. According to the arresting officers, he smelled strongly of alcohol when he was arrested, was stumbling to the point where he had to be assisted in walking, and had slurred speech and bloodshot, watery eyes. Officer Thomas did not administer sobriety tests because, for the safety of everyone involved, he wanted to incarcerate Mr. Weeks as soon as possible. However, Officer Thomas testified that he had been in law enforcement for nine years and has been involved in more than 100 DWI arrests, and that there was no doubt in his mind that Mr. Weeks was intoxicated. It was also permissible for the jury to consider Mr. Weeks' flight as evidence of guilt of DWI. *See Ward v. State*, 35 Ark. App. 148, 816 S.W.2d 173 (1991). The State presented sufficient evidence that, while he was operating his vehicle, Mr. Weeks was affected by the ingestion of alcohol to such a degree that his reactions, motor skills, and judgment were altered to the extent that he posed a clear and substantial danger to himself and other motorists or pedestrians.

Affirmed.

STROUD and MEADS, JJ., agree.