Sylvester HATLEY v. STATE of Arkansas

CA CR 99-416                                    5 S.W.3d 86

Court of Appeals of Arkansas
Division I
Opinion delivered December 1, 1999

*William C. McArthur,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Brad Newman,* Asst. Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Sylvester Hatley was convicted in a jury trial of negligent homicide and refusal to submit to a chemical test, for which he was sentenced as an habitual offender to ninety-six months in the Arkansas Department of Correction. On appeal he argues that 1) the evidence is insufficient to support his conviction for negligent homicide, and 2) the trial court erred in giving a jury instruction based on the refusal statute, Ark. Code Ann. § 5-65-202 (Repl. 1997), for the refusal to submit count. We affirm.

On May 18, 1997, Danny Loveless and his wife experienced mechanical trouble with their pickup truck as they drove northbound on Highway 65 toward Little Rock. They pulled well off the roadway and stopped. At approximately 12:20 a.m., the vehicle that Hatley was driving slammed into the pickup, killing Danny Loveless. Hatley was subsequently charged with negligent homicide, DWI, and refusal to submit to a chemical test.

At Hatley's trial, the following evidence was presented. Dr. Greene "Kip" Colvin, an ear, nose, and throat specialist who treated Hatley's facial injuries in the emergency room, testified that while working closely with Hatley's mouth area he noted a strong

odor of alcohol. He also stated that Hatley seemed "a little more lethargic or sleepy" than he would have expected from someone undergoing a painful examination and that observation bolstered his belief that Hatley was under the influence of intoxicants. Dr. Colvin also testified that the odor of alcohol could come, at least in part, from alcohol being dispersed from the body through the lungs.

Eddie Johnson testified that he saw Hatley driving on the night in question. According to Johnson, Hatley came up behind him "real fast" and eventually passed him. After Hatley passed, Johnson stated he saw the car "zigzagging from one side of the road to the other" from shoulder to shoulder across both lanes. Johnson observed this erratic driving for at least a minute, then saw Hatley hit the Lovelesses' parked vehicle. Johnson stated that he was driving at seventy miles an hour at the time, so that Hatley was exceeding the speed limit at the time of the accident. According to Johnson, the Lovelesses' truck was off the road, far enough so as not to be in the way of anyone driving in the ordinary lane of traffic. On cross-examination, Johnson testified that he told police that Hatley either had to have gone to sleep or been intoxicated.

Eddie Johnson's wife Barbara, who was riding with him on the night of the accident, testified next. She recalled that Hatley came up behind them, which caused her husband to move over to the right-hand lane. After a short time, Hatley passed them and began weaving from lane to lane. According to Barbara Johnson, the weaving stopped when Hatley hit a vehicle that was parked on the right-hand side of the road.

Sergeant Steve Pickens of the Arkansas State Police testified that when he arrived on the scene he observed heavy front-end damage to Hatley's vehicle, and corresponding damage to a horse trailer that the Lovelesses were towing. Pickens stated that the Lovelesses' vehicle was more than three feet off the roadway. He also observed Danny Loveless lying on the roadway in front of the pickup truck. According to Sergeant Pickens, he smelled the odor of an alcoholic beverage in Hatley's vehicle.

Roger L. Perry, another trooper who responded to the accident, testified that he observed the Lovelesses' vehicle parked more on the grass than on the shoulder of the road. He also testified that when he arrived, Hatley was behind the wheel of his

Cadillac and had refused medical treatment from the EMTs that were already on the scene. Trooper Perry then recalled that when Sergeant Pickens told Hatley that if he was refusing treatment he would have to go with them, as Hatley got out of his car, he noted that Hatley was "unstable" and that there was a "very strong" odor of intoxicants about his person. He also stated that he had to hold Hatley by the arm. At that point, Hatley decided that he wanted treatment.

Corporal Derrick Briggs, the first trooper to reach the scene of the accident, testified that the Lovelesses' vehicle was parked approximately five feet off the lane of traffic. He also testified that he smelled an odor of intoxicants coming from Hatley. Based on his suspicion that alcohol was involved, at UAMS, Corporal Briggs read Hatley his "Act 106 rights," his implied consent to a blood, breath, or urine test. According to Corporal Briggs, Hatley consented to the test by initialing the "yes" block and signing the form. When a nurse came in to draw the blood, however, Hatley refused to let her do so. On cross examination, Corporal Briggs stated that in addition to the strong odor he detected at the scene and in the hospital, he also noted at both the hospital and at the accident scene that Hatley had red, bloodshot eyes. Over Hatley's objection, the consent form was entered into evidence.

At the close of the State's case, Hatley moved for a directed verdict on the negligent homicide charge, arguing that the only proof of intoxication was an odor. The motion was denied. After Hatley presented a case consisting of testimony from his brother, Ivory Moore, and his mother, Mary Hatley, who both denied seeing any evidence of intoxication on the day in question, but noted that Hatley appeared to be mentally impaired because of his injuries, he renewed his objection, which was again denied.

Hatley first argues that there was insufficient evidence of intoxication to sustain his conviction for negligent homicide. He contends that there was only evidence of an odor of intoxicants, which, without any other evidence, is insufficient to prove intoxication. This argument is without merit.

■ Negligent homicide is codified in pertinent part as follows:.

(a)(1) A person commits negligent homicide if he negligently causes the death of another person, not constituting murder or manslaughter, as a result of operating a vehicle, an aircraft, or a watercraft:

(A) While intoxicated . . .

(2) A person who violates subdivision (a)(1) of this section is guilty of a Class D felony.

. . .

(c) For the purpose of this section, "intoxicated" means influenced or affected by the ingestion of alcohol, a controlled substance, any intoxicant, or any combination thereof to such a degree that the driver's reactions, motor skills, and judgment are substantially altered and the driver, therefore, constitutes a clear and substantial danger of physical injury or death to himself and other motorists or pedestrians.

Ark. Code Ann. § 5-10-105 (Repl. 1997). The test for determining sufficiency of the evidence is whether there is substantial evidence to support the verdict. *Johnson v. State*, 337 Ark. 196, 987 S.W.2d 694 (1999). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* The appellate court considers only the evidence that supports the conviction without weighing it against other evidence favorable to the accused. *Id.*

Contrary to Hatley's assertion, there was more than the mere odor of intoxicants to prove the intoxication element of negligent homicide. In addition to the strong odor of intoxicants reported by Dr. Colvin, Sergeant Pickens, Trooper Perry, and Corporal Briggs, the troopers all noted that Hatley struck the Lovelesses' horse trailer despite the fact that it was parked well off the roadway. Additionally, Corporal Briggs testified that Hatley had bloodshot eyes. The observations of police officers with regard to the smell of alcohol and actions consistent with intoxication can constitute competent evidence of intoxication. *Id.* Moreover, Hatley also refused to take a blood test, and the refusal to be tested is admissible evidence on the issue of intoxication and may indicate the defendant's fear of the results of the test and the consciousness of guilt. *Medlock v. State*, 332 Ark. 106, 964 S.W.2d 196 (1998). Eddie and Barbara Jordan also testified that Hatley was weaving across two

lanes of traffic and generally driving in a manner that caused Eddie to believe that Hatley was "either asleep or intoxicated." *See Weeks v. State*, 64 Ark. App. 1, 977 S.W.2d 241 (1998). Accordingly, we find that there is substantial evidence of intoxication and therefore we affirm the negligent homicide conviction.

Hatley next argues that the trial court erred in giving a jury instruction on refusal to submit because the instruction did not specify a knowing or intentional culpable mental state. Further, he contends that he did not knowingly or intentionally refuse the test because of the serious mental and physical condition he was in and that he was prejudiced because the jury could use his refusal to take the test to raise a presumption of conscious guilt of intoxication. Hatley asserts that without this presumption of intoxication, there was nothing but the odor of intoxicants to establish the intoxication element and the verdict would have been different. We cannot consider this argument because it is not preserved for review.

At the trial, the State submitted a jury instruction on refusal to submit based on the statute, Ark. Code Ann. § 5-65-205 (Repl. 1997), which states in pertinent part:

> (a) If a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test designated by the law enforcement agency, as provided in § 5-65-202, none shall be given, and the person's motor vehicle operator's license shall be seized by the law enforcement officer, and the officer shall immediately deliver to the person from whom the license was seized a temporary driving permit.

> (b) The Office of Driver Services shall then proceed to suspend or revoke the driving privilege of the arrested person, or any nonresident's driving privilege, on the basis of the number of previous offenses in accordance with the provisions of § 5-65-104.

The following instruction was given over Hatley's objection:

> Sylvester Hatley is charged with the offense of refusal to submit to a chemical test.

> To sustain this charge, the state must prove beyond a reasonable doubt that:

> (1) A law enforcement officer requested that Sylvester Hatley submit to a chemical test of his breath, blood or urine; and

(2) Sylvester Hatley refused to submit to the chemical test as designated by the law enforcement agency by which the officer is employed.

■ Although Hatley objected to this instruction because it omitted a culpable mental state as an element of the offense, he failed to proffer an instruction containing what he saw as the correct elements of the offense. This failure to proffer or abstract the proposed instruction precludes this court from considering the issue on appeal. *Dixon v. State*, 327 Ark. 105, 937 S.W.2d 642 (1997).[1]

Affirmed.

HART, J., and HAYS, S.J., agree.

---

[1] We note that under Ark. Code Ann. § 5-2-204 (c) (1) (Repl. 1997), a culpable mental state is not required if: "the offense is a violation, unless a culpable mental state is expressly included in the definition of the offense." An offense is a violation, as opposed to a felony or misdemeanor, "if the statute defining the offense provides that no sentence other than a fine, or fine or forfeiture, or civil penalty is authorized upon conviction." Ark Code Ann. § 5-1-108 (b) (Repl. 1997). Because the only penalty for refusal to submit is suspension of a driver's license, it is clearly only a violation and accordingly, a culpable mental state is not required.