The Honorable Becky Lynn State Representative 105 S. Third Street Heber Springs, Arkansas 72543
Dear Representative Lynn:
I am writing in response to your request for my opinion on the following questions:
1. Is violation of A.C.A. § 5-65-205 a criminal violation?
2. What is the range of penalties for violation of said statute?
RESPONSE
The answer to your first question is "yes." With respect to your second question, although subsections (b) and (d) of the statute set forth potentially conflicting formulas for determining penalties, I believe subsection (b) sets forth the controlling formula for determining the period of license suspension or, possibly, license revocation.
Question 1: Is violation of A.C.A. § 5-65-205 a criminal violation?
Yes. Section 5-65-205 (Supp. 1999) of the Arkansas Code defines the crime of "refusing to submit to a chemical test of blood, breath, or urine for the purpose of determining the alcohol or controlled substance contents of the person's blood." As the Arkansas Supreme Court expressly acknowledged in Medlock v. State, 328 Ark. 229, 233, 942 S.W.2d 861
(1997), this is a criminal statute set forth within the criminal code. More specifically, it is a criminal violation, as opposed to a felony or misdemeanor, insofar as the statute provides a penalty only of suspension or revocation of a driver's license. Hatley v. State, 68 Ark. App. 209,215 n. 1, 5 S.W.3d 86 (1999). See A.C.A. § 5-1-108(b) ("An offense is a violation for purposes of this code if the statute defining the offense provides that no sentence other than a fine, or fine or forfeiture, or civil penalty is authorized upon conviction.").
Question 2: What is the range of penalties for violation of saidstatute?
The statute is internally inconsistent regarding the range of possible penalties. Subsection 5-65-205(b) sets forth a range of penalties for "arrests or offenses" occurring after July 30, 1999. This subsection provides for "[s]uspension [of driving privileges] for one hundred eighty (180) days for the first offense of refusing to submit to a chemical test of blood, breath, or urine for the purpose of determining the alcohol or controlled substance contents of the person's blood"; a two-year suspension for a second refusal to submit to testing within a five-year period of the first offense; a three-year suspension for a third refusal to submit to testing;[1] and a lifetime revocation for a fourth or subsequent refusal to submit to testing within a five-year period of the first offense.
Read in isolation, subsection (b) is perfectly straightforward in prescribing penalties. However, in a complication that I suspect may have prompted your request, subsection (d) of the statute provides as follows:
 (d) In order to determine the number of previous offenses to consider when suspending or revoking the arrested person's driving privileges, the Office of Driver Services shall consider as a previous offense:
 (1) Any conviction for offenses of operating or being in actual physical control of a motor vehicle while intoxicated or in violation of § 5-65-103 or refusing to submit to a chemical test which occurred prior to July 1, 1996; and
 (2) Any suspension or revocation of driving privileges for arrests for a violation of § 5-65-103 or violation of § 5-65-205(a) occurring on or after July 1, 1996, where the person was subsequently convicted of the criminal charges.
Several provisions of this subsection are troubling. First, in what seems a direct contradiction of subsection (b), subsection (d) directs that not only previous convictions for refusal to submit to testing but also convictions for the separate offense of driving while intoxicated, A.C.A. § 5-65-103, be considered in determining the applicable penalty. Second, subsection (d), unlike subsection (b), contains no five-year limitation on prior convictions for purposes of penalty enhancement.
In my opinion, these problems might be resolved by applying standard principles of statutory construction. As the Supreme Court observed inBush v. State, 338 Ark. 772, 776, 2 S.W.3d 761 (1999): "It is axiomatic that the meaning of certain words or phrases cannot be determined in isolation, but must be drawn from the context in which they are used." Moreover, as the Court pointed out in Scott v. Greer, 229 Ark. 1043,1048-49, 320 S.W.2d 262 (1959):
 One of these rules, recognized and applied by this Court for many years, and applicable here, is: "Where general terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions will be given effect as clearer and more definite expressions of the legislative will." We have quoted the above rule from Hodges v. Dawdy, 104 Ark. 583, 149 S.W. 656. It was also recognized in Wiseman v. Ark. Util. Co., 191 Ark. 854, 88 S.W.2d 81. In 50 Am.Jur. 371 "Statutes" 367, the text states: "It is an old and familiar principle . . . that where there is in the same statute a specific provision, and also a general one which in its most comprehensive sense would include matters embraced in the former, the particular provision must control, and the general provision must be taken to affect only such cases within its general language as are not within the provisions of the particular provision." To the same effect see also 82 C.J.S. 720; and Crawford on "Statutory Construction" 189.
In addition, when a word in a statute is omitted or misused, it is the duty of the courts to disregard the error if the context plainly indicates the legislative intent. Johnson v. U.S. Gypsum Co.,217 Ark. 264, 229 S.W.2d 671 (1950). Finally, in construing a statute, a court may reconcile two conflicting descriptions by striking out words in one so as to conform to the other. Heinemann v. Sweatt, 130 Ark. 70,196 S.W. 931 (1917). See also Murphy v. Cook,202 Ark. 1069, 155 S.W.2d 330 (1941) (holding that where intent was obvious, court would substitute 50,000 for 40,000, as the latter figure was merely a typographical error). Seealso, Sutherland, Statutory Construction, § 47.37 (5th ed.).
Applying these principles, I believe subsection (d), which fails to mention any absolute time frame within which previous offenses must have occurred in order to warrant a penalty enhancement, must be read as qualified by the specific five-year restriction set forth in subsection (b). In other words, I believe the only applicable previous offenses are those that occurred within five years of the date of the latest refusal to submit to chemical testing.
This conclusion appears all the more appropriate if one speculates why subsection (d) might have been included at all, given that subsection (b) painstakingly sets forth the enhancements for prior offenses. I believe the legislature may well have intended subsection (d) only to ensure that the enhancement provisions would operate retroactively in the sense of including convictions incurred prior to the statute's enactment.[2] It is a basic tenet of statutory construction that legislation is presumed to operate only prospectively unless the General Assembly expressly or by necessary implication indicates otherwise. Employers Surplus InsuranceCo. v. Murphy Oil USA, Inc., 338 Ark. 299, 993 S.W.2d 481 (1999). This inference of intent is itself bolstered by the fact that, upon examination, the distinction set up in subsections (d)(1) and (d)(2) appears to have no substance other than to dictate enforcement both before and after the effective date of the statute.[3] At first blush, another distinction might appear to be that subsection (d)(2) applies to post-July 1, 1996 administrative suspensions or revocations as well as convictions. However, the clause "where the person was subsequently convicted of the criminal charges" erases this distinction. Read together, the two subsections only provide that any conviction of either refusal to submit to testing or driving while intoxicated, regardless of date, will be considered "a previous offense" for purposes of determining a penalty. In short, then, I believe subsection (d) establishes only the fact of retroactive effect, whereas subsection (b) establishes the term of that effect. There is consequently no inconsistency between the two on this score.
The task of statutory construction is considerably more complicated in attempting to resolve the statute's internal inconsistency regarding what type(s) of previous offense(s) will warrant a penalty enhancement. Subsection (b) is totally unambiguous in fully defining the offense and then providing that the availability and extent of a penalty enhancement for refusal to submit to testing will depend on the fact and the number of previous convictions for precisely that offense. Subsection (d) is equally unambiguous in providing that applicable previous convictions comprise not only those for refusal to submit to testing, but also those for driving while intoxicated.
The statute's legislative history suggests both the source and a possible resolution of this inconsistency. Subsection (b) of the statute was amended and subsection (d) was added by Act 882 of 1999. Before the adoption of this amendment, former A.C.A. § 5-65-205(b) provided that the computation of previous offenses for penalty enhancement purposes would be "in accordance with the provisions of § 5-65-104." Both the former and the current versions of A.C.A. § 5-65-104 set forth the elements of and penalties for both DWI and failure to submit to testing.[4] This statute contained and still contains precisely the inconsistency carried over to the current A.C.A. § 5-65-205. Former A.C.A. § 5-65-104(a)(4)(A) itemized the range of penalties for DWI and failure to submit to testing, respectively, separately defining the offenses and penalties for each and declaring that the applicable period for enhancement purposes was three years prior to the subject offense. As in the current A.C.A. § 5-65-205, this subsection unambiguously provided that only prior convictions for failure to submit to testing would warrant a penalty enhancement on a current charge for that offense. However, notwithstanding the fact that the statute had already defined applicable prior convictions for each offense, in a section providing guidance to the Office of Driver Services, the statute inserted a second formula for computing the number of prior convictions. Former A.C.A. § 5-65-104(a)(9). This second formula differed from the first in not separately treating the two distinct offenses defined in the statute. In other words, because the statute dealt with both DWI and failure to submit to testing — a condition that still applies in the revised statute — the second formulation listed prior convictions for both offenses as applicable in making an enhancement determination.
In my opinion, both the former and the current A.C.A. § 5-65-104(a)(9) should be read as merely identifying the varieties of previous offenses that might apply to one or the other of the two offenses addressed in the statute. Given the unambiguous indication earlier in the statute that only previous convictions on the same charge would warrant enhancing a penalty for DWI or failure to submit, respectively, I do not believe that the recitation of both in subsection (a)(9) could be read as dictating that a previous DWI should be counted as a previous offense for enhancement purposes on a then current charge of failure to submit to testing.[5]
In Act 882 of 1999, the legislature commendably incorporated the penalty provisions for failure to submit into the statute exclusively devoted to that offense, rather than merely referring to another statute that addressed two distinct offenses. However, in amending A.C.A. § 5-65-205, the legislature simply transferred into the statute both of the above-discussed provisions of former A.C.A. § 5-65-104. Unfortunately, because the current statute addresses only a single offense, the apparent inconsistency cannot be resolved by a simple analysis of the statute itself, as I have attempted to do above with respect to former A.C.A. §5-65-104. Nevertheless, I believe my analysis of former A.C.A. § 5-65-104
supports the conclusion that the legislature never intended previous DWI convictions to bear on penalty enhancement for failure to submit to testing. Rather, I believe the inclusion of previous DWI's in A.C.A. §5-65-205(d) is merely an inadvertent carryover from former A.C.A. §5-65-104. As previously noted, in construing a statute, a court may reconcile two conflicting descriptions by striking out words in one so as to conform to the other. Heinemann v. Sweatt, 130 Ark. 70, 196 S.W. 931
(1917). That is precisely what I believe a court would do in this instance. However, assuming I am correct in my reading, it would obviously be advisable for the legislature to amend the statute to resolve the inconsistency.[6]
The current A.C.A. § 5-65-205 contains one further penalty provision that I consider ambiguous. Subsection (e) of the statute provides that if an unlicensed Arkansas resident refuses to submit to a chemical test, he will be denied issuance of a license for a period of six months for a first offense and one year for a second offense. The statute designates these penalties as being "in addition to any other penalties provided for in this section." However, the only other penalties mentioned in the statute are suspension or revocation of driving privileges — sanctions that obviously cannot be imposed on someone who has no driving privileges in the first place. The question arises, then, whether the legislature intended the penalty of suspension to attach as soon as a previously unlicensed driver obtains a license — i.e., after the six-month or one-year period of no access to a license has passed. I cannot answer this question.
Finally, A.C.A. § 5-6-205(c) (Supp. 1999) provides that all offenses that occurred before July 30, 1999 must be decided under the law in effect at the time of the offense. As discussed above, this provision dictates that one look to former A.C.A. § 5-65-104(a)(4)(A) for the range of possible penalties. This range is the same as under the present law except for the fact that the applicable time period within which previous offenses will result in a penalty enhancement is three years rather than five.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] The statute does not recite the five-year limitation with respect to a third refusal to submit to testing. Given the inclusion of this limitation in all the other enhancement provisions, I believe its omission with respect to third offenses is an inadvertent error in drafting. I am reinforced in this conclusion by the fact that A.C.A. §5-65-104(a)(3)(C)(iii), which addresses the penalty enhancement for third-offense refusal to submit within the Omnibus DWI Act, see discussion infra, does recite the five-year limitation.
[2] In Finley v. State, 282 Ark. 146, 666 S.W.2d 701 (1984), the Supreme Court held that an act creating penalty enhancements for prior offenses did not violate the "ex post facto" clauses of the Arkansas and U.S. Constitutions. See U.S. Const. art. I, § 10 and Ark. Const. art. II, § 17. The Court held that the enhanced penalty "`is not for the first or second offense, but is for the third offense, which is considered as aggravated by reason of the preceding offenses.'" 282 Ark. at 148,quoting Sims v. State, 262 Ark. 288, 556 S.W.2d 141 (1977). See
discussion in Ark. Op. Att'y Gen. No. 95-260.
[3] Although the effective date of subsection (d) was July 30, 1999, it actually recites the date of July 1, 1996 in subsections (d)(1) and (d)(2). However, I do not think this discrepancy undermines my point. As discussed infra, subsection (d) was transferred verbatim from a predecessor statute whose effective date was indeed July 1, 1996, strongly suggesting an intention to ensure retroactive effect. As further discussed below, this transfer was apparently undertaken in somewhat slapdash fashion, without any significant inquiry into whether minor changes were warranted. I suspect the drafters simply overlooked the need to amend the statute to reflect the new effective date.
[4] Although A.C.A. § 5-65-104 was amended by Acts 1077, 1468 and 1508 of 1999 — all enacted during the same term in which A.C.A. § 5-65-205 was overhauled and made self-sufficient — the legislature did not remove from the DWI statute the provisions pertaining to refusal to submit to testing. The elements of and penalties for refusal to submit to testing are now consequently set forth in both statutes.
[5] In support of a contrary conclusion, one might conceivably argue that naming previous DWI's as prior offenses of refusal to submit to testing reflects a legislative judgment that a DWI suspect is somehow more culpable in refusing to cooperate in testing if he has been previously convicted of DWI. I consider this argument unconvincing for the simple reason that words have meaning, making it logically offensive to suggest that an individual who has indisputably refused to submit to testing only once can be convicted of having refused to submit twice. Subsection (b) of the statute clearly and plausibly sets forth all the elements of the previous offense, and the contrary, illogical provisions of subsection (d) cannot be wrenched into accordance with the earlier provision. Although I am not a finder of fact and so have not researched the issue, I strongly suspect that neither the Office of Driver Services nor any prosecutor actually counts a conviction for refusal to submit to testing as a prior offense for DWI and vice versa. If I am correct in this suspicion, it is because these officials instinctively recognize that an offense cannot be something other than what it is defined to be. I am not inclined to opine otherwise because to do so would be to violate the principle that one may not read a statute in a way that would result in an absurdity or presume that the legislature enacted a vain and meaningless law. See Yarbrough v. Witty, 336 Ark. 479, 484,987 S.W.2d 257(1999); Lawhon Farm Servs. v. Brown, 335 Ark. 272,948 S.W.2d 1 (1998); Citizens To Establish A Reform Party v. Priest,325 Ark. 257, 926 S.W.2d 432
(1996); Henson v. Fleet Mortgage Co., 319 Ark. 491, 892 S.W.2d 250
(1995); Neely v. State, 317 Ark. 312, 877 S.W.2d 589 (1994);Death and Total Permanent Disability Trust Fund v. Whirlpool Corp.,39 Ark. App. 62, 837 S.W.2d 293 (1992).
[6] Given the 1999 amendment of A.C.A. § 5-65-205, it might further be advisable for the legislature to remove from the Omnibus DWI Act, A.C.A. § 5-65-101 et seq., any redundant reference to the offense of failing to submit to chemical testing.