2010 Ark. App. 301

**John A. DIGGINS, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–1178.**

Court of Appeals of Arkansas.

April 7, 2010.

---

William Plunkett Luppen, Little Rock, for Appellant.

Brad Newman, Asst. Atty. Gen., for Appellee.

KAREN R. BAKER, Judge.

A Jefferson County jury convicted appellant, John Diggins, of second-degree murder. He was sentenced to thirty years' imprisonment in the Arkansas Department of Correction for the murder conviction and an additional ten years in the Arkansas Department of Correction for employing a firearm as a means of committing the felony pursuant to Ark. Code Ann. § 16–90–120. The sentences were to run consecutively. Appellant does not challenge the sufficiency of the evidence, but rather alleges, first, that the trial court erred in allowing the State to introduce into evidence through the testimony of Charles Gray a hearsay statement made by Herbert Ford under the excited-utterance exception, and second, that the trial court erred in not allowing appellant to cross-examine Charles Gray about Herbert Ford's intellectual and emotional capacity. We affirm on both points.

At trial, Herbert Ford testified that he knew both appellant and the victim, Freddie Cotton. Ford testified that appellant was his nephew by marriage and that he had known appellant "all of his life." Freddie Cotton was Ford's friend. Ford stated that he remembered February 2, 2007, when Freddie Cotton was shot and killed. On the day of the shooting, appellant arrived at Ford's house to collect "a few dollars" that Ford owed to him. Ford testified that he did not have the money there at his house, so he and appellant drove to Ann Prior's home where Ford would get the money to give to appellant. While Ford and appellant were sitting in Miss Ann's driveway, Freddie Cotton pulled up in his vehicle. Ford testified that he did not make it inside Ann's home to get the money before appellant and Freddie Cotton began exchanging "some words." Ford described the exchange as "fussing." Ford stated that appellant and Freddie Cotton were friends and that he had witnessed them "talk back and forth like that" before. However, on this occasion, their argument escalated into a fight. Ford testified that the argument "got so heated up, [he] got out of the car." He hurriedly said to appellant, "Hey, man, I'll get with you later," and Ford went immediately to his home.

Ford testified that he did not look back and watch appellant and Cotton fighting. He also stated that he did not hear any gunshots until he got inside his home. However, he stated that he did not look outside the window and did not see Freddie Cotton lying in the street. After he heard the gunshots, Ford quickly left his home on his bicycle and rode to his sister's home that was nearby. Ford testified that his sister was married to Charlie Gray, who was appellant's uncle. When he arrived at his sister's house, Charlie was the only person there. He told Charlie that he "heard some shots" but that was all he said. He denied telling Charlie that appellant shot Freddie Cotton.

When presented with a transcript of a statement labeled "Taped Interview with

Herbert Ford," Ford testified that he did not recall giving a taped interview to police. Specifically, he stated that he was not denying it, but rather that he did not remember giving it. He denied telling police in the taped interview what he saw the day Cotton was killed. He denied making the statement that "the only person [he] could think of who shot Freddie was Diggins because only the three of [them] were out there." He also denied telling police that "[he] saw Freddie on the ground or that [he] saw Diggins standing in the street with a gun in his hand." He testified that he was denying the statements because he did not "know anything about that." He testified that he did not read or write, thus, he would not be able to read from the transcript of the taped interview. He also testified that he was disabled due to problems with his neck and back. He stated that he did not want to testify at trial and was present only because of the subpoena. However, he stated that he was "not afraid to testify."

The prosecutor then played Ford's tape-recorded statement. Again, Ford denied that it was his voice on the recording, alleging that the taped voice did not sound like his voice, and stated that he thought that someone was impersonating him.

Odetric Hill testified that he was supposed to meet appellant at Ann Prior's house on February 2, 2007. On that day when he arrived, appellant was sitting in his car in Ann's driveway. He testified that he did not know Herbert Ford. Hill stated that he got into appellant's vehicle on the passenger side and that no one else was in the vehicle. He further described how two to three minutes later, Freddie Cotton arrived at Ann's house and that appellant and Cotton began to argue. At first, Hill did not pay much attention to

the arguing because they "[were] friends." However, when the two began to "exchange blows," Hill began to take notice. Hill testified that appellant got out of the vehicle and stood between the vehicle and the open car door; Cotton stood on the other side of the open car door. Hill testified that at that moment, he did not see either man with a gun. Appellant and Cotton then "threw a couple of hands," and appellant got back into the vehicle and reached under the seat. Hill stated, "He got a gun from under the seat." Hill testified that before he realized what was happening, three to four shots were fired. At that moment, Hill got out of the car and "took off running." Hill estimated that twelve to thirteen shots total were fired. He testified that he did not see a gun in Cotton's possession, but he nevertheless ran from the situation because he did not know whether Cotton would be returning fire. Hill's goal was to "get out of the way." Hill testified that appellant got back inside his vehicle and began backing out of Miss Ann's driveway. After appellant left the driveway, Hill saw Cotton lying in the street. Hill left the scene in his vehicle.

Charles Gray testified that appellant was his nephew, and Herbert Ford was his brother-in-law. Gray was not present at the scene when Cotton was shot and killed, but he was aware of what had happened because he spoke with Herbert Ford just after the incident. At that moment, defense counsel objected to "anything that Herbert Ford said to [Gray]," alleging hearsay. The prosecution responded that he was about to provide a foundation that would permit the court to allow the statements under the excited-utterance exception to the hearsay rule. The court took the objection under advisement and allowed the State to proceed.

Gray testified that Ford arrived at his home on a bicycle and that he was "tired, huffing and he was riding real fast . . . he was just in a frantic." Gray stated that Ford was "tired" and "not acting any different than [he had] seen him in the past." However, Gray stated that he was under the impression that "something disturbed [Ford]," and that Ford was "upset." Ford's behavior prompted him to ask Ford, "What's wrong with you?"

At that moment, the prosecutor advised the court that the testimony fit within the excited-utterance exception to the hearsay rule. Defense counsel argued that the declarant's statement was not an excited-utterance. The trial court determined that the excited-utterance exception applied under these facts where the testimony showed that the declarant heard gunshots, quickly rode his bicycle to his sister's home, and behaved in such a frantic, upset, and disturbed manner that Gray was prompted to ask him what was wrong with him.

Gray continued by testifying that Ford said that "he had just seen a killing." Ford said that "[Gray's] nephew had shot—had got into it with Freddie Cotton and shot Freddie Cotton." On cross-examination, Gray testified that Ford had "mental problems." At this point, the State objected, stating that the question was beyond the scope of cross-examination. The trial court's response was that defense counsel had not provided a foundation for Gray's ability to testify as to Ford's "mental condition." The trial court asked for Gray's qualifications. Gray responded that "[he] was not a doctor . . . [but he had] known Mr. Ford for over 30 years." Defense counsel then asked Gray if Ford had "the mental capacity of a grown man," to which the State objected.

The trial court sustained the objection reiterating that the question required that defense counsel lay a foundation. The trial court informed defense counsel that if he would lay a proper foundation, he could ask the question. However, defense counsel did not proceed with any further questions.

After the conclusion of the trial, the jury convicted appellant of second-degree murder and sentenced him to consecutive imprisonment terms of thirty years for the murder with an additional ten years for employing the use of a firearm as a means of committing a felony. This appeal followed.

Appellant's first argument on appeal is that the trial court erred in allowing the State to introduce into evidence through the testimony of Charles Gray a hearsay statement made by Herbert Ford under the excited-utterance exception. "Decisions by a trial court with respect to evidentiary rulings are entirely within the court's discretion, and will not be reversed absent an abuse of that discretion." *Fudge v. State,* 341 Ark. 759, 768, 20 S.W.3d 315, 320 (2000), *cert. denied,* 531 U.S. 1020, 121 S.Ct. 585, 148 L.Ed.2d 500 (2000). The excited-utterance exception found at Arkansas Rule of Evidence 803(2) provides that a statement will not be excluded as hearsay if it "relat[es] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." "[I]t is within the trial court's discretion to determine whether a statement was made under the stress of the excitement or after the declarant has calmed down and had an opportunity to reflect." *Fudge,* 341 Ark. at 769, 20 S.W.3d at 320. The Arkansas Supreme Court has adopted the following factors to consider when determining

whether a statement falls under the excited-utterance exception: the lapse of time, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement. *Killcrease v. State,* 310 Ark. 392, 395, 836 S.W.2d 380, 381–82 (1992) (adopted from *United States v. Iron Shell,* 633 F.2d 77 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981)).

Appellant alleges that the statements to Gray were merely the product of reflection and deliberation and do not fall under the excited-utterance exception to the hearsay rule. As authority for this proposition, appellant cites us to *Rodriguez v. State,* 372 Ark. 335, 276 S.W.3d 208 (2008). However, the facts in *Rodriguez* are distinguishable from the facts at hand. In *Rodriguez* the court found that the requirements of the excited-utterance exception were not met where almost two days had passed between the incident and the statement and where the declarant's demeanor was calm when the statements were made to police. *Id.* at 338, 276 S.W.3d at 212. Here, testimony revealed that just prior to Ford making the statement at issue, Ford had been with appellant and the victim when they began to argue. Ford made a quick escape to his home. He immediately heard gunfire. He quickly rode his bicycle to his sister's house where he found Gray. Gray testified that Ford was "frantic," "tired," "huffing," and "riding real fast." Gray testified that Ford seemed "disturbed." When asked about his behavior, Ford responded that appellant and Cotton had just gotten into an argument and that appellant shot Cotton. Under the facts presented in this case, we see no abuse of discretion in the finding that Ford's statements were made while still under the stress of the incident.

Appellant's second argument was that the trial court erred in not allowing appellant to cross-examine Charles Gray about Herbert Ford's intellectual and emotional capacity. On appeal, appellant makes the argument that Gray's thirty-year relationship with Ford was a proper foundation for Gray to testify as to Ford's mental condition. We agree with the State that because appellant failed to make this argument below, we will not consider it. *See Echols v. State,* 326 Ark. 917, 936 S.W.2d 509 (1996), *cert. denied,* 520 U.S. 1244, 117 S.Ct. 1853, 137 L.Ed.2d 1055 (1997) (stating that even a constitutional argument is waived if it is not presented to the trial court); *Aydelotte v. State,* 85 Ark.App. 67, 146 S.W.3d 392 (2004) (stating that it is well settled that we will not consider an argument raised for the first time on appeal).

Based on the foregoing, we affirm.

GRUBER and MARSHALL, JJ., agree.